**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JUNZHOU HUANG | |
| Plaintiff, | Case No. 1:24-cv-01562 |
| v. | |
| MyfatBOSS | **Honorable Jorge L. Alonso** |
| Defendant. | **JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR**

**ENTRY OF A TEMPORARY RESTRAINING ORDER AND OTHER RELIEF**

# Table of Contents

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS ......................................................................................... 1

III. ARGUMENT ............................................................................................................ 3

        A.    Plaintiff Satisfies the Legal Standard for an *ex parte* Temporary Restraining Order ........................................................................................ 4

        B.    Plaintiff Will Likely Succeed on the Merits ....................................................... 5

            1.    MyfatBOSS' Accused Pet Fountain Filters Infringe the 'D763 Patent .................................................................................... 5

            2.    Plaintiff is Likely to Prevail on Design Patent Validity at Trial ......................................................................................... 13

        C.    Plaintiff Will Suffer Irreparable Harm in the Absence of Temporary Restraining Order ........................................................................ 14

        D.    The Balance of Equities Tips in Plaintiff's Favor ........................................... 17

        E.    Issuance of the Injunction is in the Public Interest ......................................... 17

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE .............................. 18

        A.    Preventing the Fraudulent Transfer of Assets Is Appropriate ....................... 19

        B.    Plaintiff is Entitled to Expedited Discovery ................................................... 21

        C.    Service of Process by Email is Warranted ...................................................... 22

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ............................... 24

VI. CONCLUSION ....................................................................................................... 24

# Table of Authorities

## Cases

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) ........................................................................................................... 20

*Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013) ............................................................................................................................... 16

*Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) ............................................................................................................................... 18

*Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933) ..................................................................................................... 6

*Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ..................................................................................................... 15

*Arminak & Assocs., Inc. v. St.-Gobain Calmar, Inc.*, 424 F. Supp. 2d 1188, 1196 (C.D. Cal. 2006) ........................................................................... 6

*AstraZeneca LP v. Apotex, Inc., 633 F.3d 1042, 1049 (Fed. Cir. 2010)* .................................................................................................................... 4

*Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998) ..................................................................................................... 5

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 992, 931 (Fed. Cir. 2012) ............................................................................................................... 17

*Charter National Bank & Trust v. Charter One Financial, Inc.*, No. 01 C 0905, 2001, (N.D. Ill. May 15, 2001) ................................................... 5

*Coach, Inc., et al v. Does* 1-100, No. 12-cv-8963 (N.D. Ill. Nov. 15, 2012) ............................................................................................................... 20

*Cobraco Manufacturing Co. v. Valley View Specialties Co.*, No. 90 C 0284, 1990 U.S. Dist. LEXIS 10958, (N.D. Ill. Jan. 19, 1990) ............................ 18

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ......................................................................................................... 3

*Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002) ..................................................................................................... 6

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ............................................................................................................................... 6

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ............................................. 19

*Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n,* No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *4 (N.D. Ill. Mar. 27,

2013) ................................................................................................. 5

*Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-03249 (N.D. Ill. April 14, 2015) ......................................... 24

*Dobson v. Dornan*, 118 U.S. 10, 14 (1886)) ........................................ 6

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) .................................................................................................. 5

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ................................... 15

*Gianni Versace, S.P.A. v. Yong Peng, et al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) ............................................................................ 22

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) .................... 21

*Gorham Co. v. White, 81 U.S. 511 (1872)* ........................................... 6

*Granny Goose Foods, Inc., v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974) ............................................................................... 3

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) .................................................................................. 24

*In re LDK Solar Securities Litigation*, No. C 07-05182 WHA (N.D. Cal. Jun. 12, 2008) .................................................................. 23

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ................................................................................................ 22

*Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) .................................................................................... 5

*Jun Lu v. Device X,* No. 23-cv-04282, (N.D. Ill. July 10, 2023) ......... 20

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ................................................................................. 8

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ................................................................................ 19

*Levi Strauss & Co., v. Zhejiang Weidu Garment Co., Ltd. et al.*, No. 16-cv-7824 (N.D. Ill. Nov. 17, 2016) ...................................... 23

*Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) ............................................................ 15

*Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015) .......................................................................... 24

*National Presto Indus. Inc. v. Dazey Corp.*, 18 U.S.P.Q.2d 1113, 1121 (N.D. Ill. 1990) ....................................................................... 18

*Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ........................................................ 15

*Oakley, Inc. v. Does* 1-100, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) ............................................................................................... 20

*OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1404-05 (Fed. Cir. 1997) ...................................................................................... 5

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978) ........................................................................................... 21

*Otter Prods., LLC v. Anke Grp. Indus. Ltd.*, Case No. 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) ......................... 15

*PCT Int'l Inc. v. Holland Elecs. LLC,* No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015) ................ 16

*Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) ....................................................................................... 15

*Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994) ................................................................................................ 16

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ...................................................................................... 19

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010) ........................................................................................................ 7

*Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011) ...................................................................... 14

*Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ...................................................................................... 17

*Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972); *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989) ...................... 24

*Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ...................................................................................... 18

*Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) ...................... 23

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331-32 (S.D.N.Y. 2015) .................................................................................. 23

*Titan Tire Corp v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009) ...................................................................................... 5

*Tory Burch LLC v. Does 1-100*, No. 12-cv-07163 (N.D. Ill. Sep. 14, 2012) ................................................................................................ 20

*Tory Burch LLC v. Zhong Feng, et al.*, No. 12-cv-9066 (N.D. Ill. Nov. 15, 2012) ........................................................................................ 20

*Tuf-Tite, Inc. v. Fed. Package Networks, Inc.,* No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) ............................ 16

*TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir.

2001) ........................................................................................................................ 5

*Vance v. Rumsfeld*, 06-cv-06964, 2007 W.L. 4557812, *15 (N.D. Ill. Dec. 21, 2007) ............................................................................................. 21

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ............................... 15

## Statutes

35 U.S.C. § 271 ........................................................................................................... 3

35 U.S.C. § 271(a) ...................................................................................................... 14

35 U.S.C. § 282 ...................................................................................................... 5, 13

35 U.S.C. § 283 ........................................................................................................... 4

37 C.F.R. § 1.153 ........................................................................................................ 5

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 21

Fed. R. Civ. P. 4(f)(3) .......................................................................................... 22, 23

Fed. R. Civ. P. 65(b) ................................................................................................... 3

Fed. R. Civ. P. 65(c) ................................................................................................. 23

I.     INTRODUCTION

Plaintiff is requesting temporary *ex parte* relief based on an action for infringement of

design patent U.S. Pat. No. D912,763 against Defendant MyfatBOSS.  As shown in Plaintiff's

Complaint, Defendant is offering for sale and selling unlicensed products, namely Cat/Pet Water

Fountain Filters ("Infringing Products"), that infringe Plaintiff's patented design through

Defendant's fully interactive, commercial Amazon storefront ("Defendant Amazon Storefront"

or "Defendant Amazon Store"). Defendant is reaching out to do business with Illinois residents

by operating its commercial, interactive Defendant Amazon Store, through which Illinois

residents can purchase Infringing Products. Further, Defendant attempts to avoid liability by

concealing its identity.

Plaintiff is forced to file this action to combat Defendant's infringement of Plaintiff's

patented design, as well as to protect unknowing customers from purchasing Infringing Products

over the Internet.  Therefore, Defendant's ongoing unlawful activities should be restrained, and

Plaintiff requests that this Court issue an *ex parte* Temporary Restraining Order.


II.    STATEMENT OF FACTS

A.     **Plaintiff's Products and Patented Design**

Plaintiff, Junzhou Huang ("Huang" or Plaintiff), is the named inventor and patentee of

U.S. Patent No. D912,763 ("the 'D763 Patent"). The 'D763 Patent generally relates to the

ornamental design for a round-shaped filter for a pet fountain, with a hole in its center, and four

pockets evenly distributed on its surface, where each pocket is in the shape of a circular sector of

90 degrees. Plaintiff is currently supplying the Patented Products to about twenty (20)

distributors/retailers across the United States, most of which are Amazon Online

1

Sellers/Storefronts. One example of the Patented Products being sold by Amazon Storefronts is

Wonder Creature Cat Water Fountain Filter Replacement (Amazon ASIN: B07MBC5LQ4),

which receives quality customer reviews and high ratings (4.7 stars on more than eight thousand

reviews). (https://www.amazon.com/Wonder-Creature-Stainless-Fountain-

Activated/dp/B07MBC5LQ4/ref=sr_1_2?crid=1WXZ2PMTJ055L&keywords=B07MBC5LQ4&

qid=1703678221&sprefix=b07mbc5lq4%2Caps%2C295&sr=8-2)

## B.     Defendant's Infringing Activities

MyfatBOSS, itself and through parents, divisions, subsidiaries and/or agents are engaged

in the business of manufacturing, marketing, and distributing, and selling a variety of cat/pet

water fountain filters. Among these products, at least five models infringe the 'D763 Patent. The

identified Infringing Products are:

(a)     MyfatBOSS Cat Water Fountain Filter, Cat Fountain Filter Replacement, 6 Pack

Water Fountain Filters for 63 oz cat water fountain Pet Water Fountain; (ASIN: B0C28DH9H1);

https://www.amazon.com/dp/B0C28DH9H1/?th=1; "MyfatBOSS 6 Pack – 63oz")

(b)     MyfatBOSS Cat Fountain Filters, 10 Pack Pet Fountain Filters, Pet Fountain

Filter Replacement, Cat Water Filter Replacement for Pet Water Fountain; (ASIN:

B0B56GDNHD; https://www.amazon.com/dp/B0B56GDNHD/; "MyfatBOSS 10 Pack")

(c)     MyfatBOSS Cat Water Fountain Filter, 16 Pack Pet Fountain Filters, Pet Fountain

Filter Replacement, Cat Water Filter Replacement for Pet Water Fountain; (ASIN:

B0BLC82GLL; https://www.amazon.com/dp/B0BLC82GLL/; "MyfatBOSS 16 Pack")

(d)     MyfatBOSS Cat Fountain Filter Replacement for Catit Flower Fountain 3L, 6

Pack Cat Water Fountain Filter for Catit Design Senses Fountain, Pet Water Fountain

Filter;(ASIN: B0C2CG5VPJ; https://www.amazon.com/dp/B0C2CG5VPJ/; "MyfatBOSS 6 Pack – 3L")

(e)      MyfatBOSS Cat Water Fountain Filter for Catit, 12 Pack Cat Fountain Filter Replacement for Catit Flower Fountain 3L, Cat Water Filter for Catit Design Senses Fountain; (ASIN: B0BXWY5KSS; https://www.amazon.com/dp/B0BXWY5KSS/; "MyfatBOSS 12 Pack")

MyfatBOSS infringes the 'D763 Patent in violation of 35 U.S.C. § 271 by making, using, offering to sell, selling, and/or importing the infringing pet water fountain filters, because these products are identical or substantially similar to the patented ornamental design of the 'D763 Patent.

## III.    ARGUMENT

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, this Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Numerous courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary…relief can be granted"). Further, an *ex parte* order preserves the *status quo* and prevents irreparable harm. *See Granny Goose Foods, Inc., v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

3

Here, Defendant's infringing conducts are causing and will continue to cause irreparable harm to Plaintiff's intellectual property rights and associated reputation. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendant from benefiting from their wrongful use of the 'D763 Patent and preserve the *status quo* until such time as a hearing can be held. In the absence of an *ex parte* temporary restraining order, the Defendant can and likely will register new Amazon seller IDs and move any assets to bank accounts outside the jurisdiction of the Court.

As such, Plaintiff requests that this Court issue an *ex parte* temporary restraining order.

**A.      Plaintiff Satisfies the Legal Standard for an *ex parte* Temporary Restraining Order**

Rule 65(b) provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if . . .  specifics facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b). Further, this Court has authority to issue injunctive relief in this case under Section 283 of the Patent Act which provides, "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

To obtain an injunctive relief, a plaintiff has to demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) that the balance of equities tips in plaintiff's favor; and (4) that injunctive relief is in the public interest. *See AstraZeneca LP v. Apotex, Inc., 633 F.3d 1042, 1049 (Fed. Cir. 2010)*. The Courts within this Circuit hold similar standards for granting *ex parte* restraining orders. *See Deckers Outdoor Corp. v. P'ships &*

*Unincorporated Ass'n,* No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *4 (N.D. Ill. Mar. 27, 2013) (citing *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) and *TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)); *see also Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998).

Courts in this District also hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g., Charter National Bank & Trust v. Charter One Financial, Inc.*, No. 01 C 0905, 2001, (N.D. Ill. May 15, 2001), at *1.

### B.   Plaintiff Will Likely Succeed on the Merits

Plaintiff is the named inventor and rightful owner of the 'D763 Patent. As an issued U.S. Patent, the 'D763 Patent is entitled to a presumption of validity under 35 U.S.C. § 282.

To establish a likelihood of success on a design patent infringement claim, Plaintiff has to show "that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009)

### 1.   MyfatBOSS' Accused Pet Fountain Filters Infringe the 'D763 Patent

A design patent contains a single claim. 37 C.F.R. § 1.153. "Whether a design patent is infringed is determined by first construing the claim to the design ... and then comparing it to the design of the accused device." *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1404-05 (Fed. Cir. 1997). The Federal Circuit has established that "the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). To show infringement under the ordinary observer test, a plaintiff must demonstrate that "an ordinary observer, familiar with the prior art

designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Egyptian Goddess*, 543 F.3d at 681); *see also Gorham Co. v. White, 81 U.S. 511 (1872)*.

The Supreme Court in *Gorham Co.* defines ordinary observers as those having "ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which [people] of ordinary intelligence give." *Gorham Co.*, 81 U.S. at 528. More specifically, "the ordinary observer is not any observer but one who, with less than the trained faculties of the expert, is 'a purchaser of things of similar design,' or 'one interested in the subject.'" *Arminak & Assocs., Inc. v. St.-Gobain Calmar, Inc.*, 424 F. Supp. 2d 1188, 1196 (C.D. Cal. 2006) (quoting *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933)).

### a) Claim construction

For construction of claimed design, "[a]s the Supreme Court has recognized, a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess*, 543 F.3d at 679 (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). A district does not have "to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents." *Egyptian Goddess*, 543 F.3d at 679 (citing *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002) (approving district court's construction of the asserted claim as meaning "a tray of a certain design, as shown in Figures 4-5")); *see also Crocs, Inc.*, 598 F.3d at 1302 ("This court has cautioned, and continues to caution, trial courts about excessive reliance on a detailed verbal description in a design infringement case.") (citation

omitted).  As demonstrated above, a detailed verbal claim construction is not required, and a claim construction based on the figures/illustrations is more proper.

Here, the 'D763 Patent covers ornamental designs for pet fountain filters. The overall visual effect of the ornamental designs of the 'D763 Patent is represented, for example, by Figs. 1 and 7 as shown below. Specifically, the ornamental design of the 'D763 Patent should be construed as a round-shaped filter for a pet fountain, with a hole in its center, and four pockets evenly distributed on its surface, where each pocket is in the shape of a circular sector of 90 degrees.



Fig.1                                              Fig.7

     **b)**     **Non-Functional Element (Ornamental Features) of the Claimed Design**

Claims of a design patent are commonly construed by differentiating the functional and non-functional elements in the claims. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.") (quoting *OddzOn Prods.*, 122 F.3d at 1405).

Federal Circuit further determines that "[i]f ... a design contains both functional and ornamental features, the patentee must show that the perceived similarity is based on the

ornamental features of the design. The patentee 'must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental.'" *OddzOn Prods.*, 122 F. 3d at 1405. Thus, a district court properly excludes the functional aspects of a design as part of its claim construction. *Id*.

   "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). Here, as with many designs, Defendant may allege that the claimed design of the 'D763 Patent contains some functional elements. However, even if there are some functional elements, the 'D763 design should be construed as encompassing the ornamental design applied to such elements. *Richardson*, 597 F.3d at 1294 (quoting *L.A. Gear*, 988 F.2d at 1123 ("The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent.")).

   More importantly, alternatives for accomplishing any functionality that may be allegedly associated with the 'D763 design or the various design elements of the 'D763 Patent do exist. As explained in Huang's Declaration (Exhibit B), there are other ways to achieve filtration function of the alleged filters. For example, the filters do not have to take a round shape (e.g., square/rectangle shaped), or do not have a hole in their centers, or do not have four pockets (e.g., more than or less than four pockets), or the pockets of which do not evenly distributed on its surface (e.g., irregular shaped pockets; each pockets taking a circular sector of more or less than 90 degrees). (Huang Decl. ¶¶ 11).

   Accordingly, the elements of the 'D763 design are not "'dictated by' the use or purpose of the article", *L.A. Gear*, 988 F.2d at 1123, and thus functionality should not significantly

impact the claim construction of the 'D763 Patent, designs as illustrated in the figures of the 'D763 Patent.

c)      <strong>Comparison of the 'D763 Patent and Infringing Pet Water Filters</strong>

"The comparison step of the infringement analysis requires the fact-finder to determine whether the patented design as a whole is substantially similar in appearance to the accused design. The patented and accused designs do not have to be identical in order for design patent infringement to be found." *OddzOn Prods*., 122 F.3d at 1405. "The proper comparison requires a side-by-side view" of the patent design and the accused product. *Crocs, Inc.*, 598 F.3d at 1304.

Applying the above rules, we provide below a comparison of the 'D763 design and a representative infringing product "MyfatBOSS 12 Pack" (B0BXWY5KSS). *See also* Exhibit A. (Same as Exhibit 3 for the Complaint).

| Claim of U.S. Pat. No. D912,763 | ASIN: B0BXWY5KSS; "MyfatBOSS 12 Pack" product as a representative of all infringing products |
|---|---|
|  | |

(A screenshot obtained from the webpage embedded product video)



Fig.2

The rear surface of the infringing product is flat and is made of a semi-transparent material, which allows a viewer to see through it.



Fig.3



Fig.4

Fig.5

Fig.6



As is readily apparent from the side-by-side comparison, the representative example Infringing Product includes the same design features, which are not to be discounted due to functionality, as the designs claimed in the 'D763 Patent. Thus, the Infringing Products have a deceptively similar and indeed identical overall visual effect that deceives purchasers and easily satisfies the ordinary observer test. Specifically, an ordinary observer would be deceived into thinking that the Infringing Products are the same as the Design Patent. *Egyptian Goddess, Inc.* 543 F.3d 665, 672 (Fed. Cir. 2008).

2. **Plaintiff is Likely to Prevail on Design Patent Validity at Trial**

Plaintiff also has to show that it "will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp.*, 566 F.3d at 1376. "In assessing whether the patentee is entitled to the injunction, the court views the matter in light of the burdens and presumptions that will inhere at trial." *Id*. "At trial ... an issued patent comes with a statutory presumption of validity under 35 U.S.C. § 282. Because of this presumption, an alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and

convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation." *Id*.

"Before trial ... these burdens and presumptions [are] tailored to fit the preliminary injunction context." *Id* at 1377. "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id*. If a Defendant comes forward with evidence of invalidity, Plaintiff is entitled to respond. *Id*.

Further, the United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Here, Defendant's products are not licensed or authorized in any way. Accordingly, Plaintiff is likely to succeed on the merits of its claim that Defendant infringes the 'D763 Patent.

**C.      Plaintiff Will Suffer Irreparable Harm in the Absence of Temporary Restraining Order**

Plaintiff will undoubtedly be irreparably harmed in the absence of a temporary restraining order. Federal Circuit in *Bosch* held that irreparable harm, within the context of patent infringement, occurs when the "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011).

Several courts determine that in order to obtain injunctive relief, a plaintiff need only show that an irreparable harm is likely. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co.*

14

*Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In the absence of a temporary restraining order, Plaintiff will suffer irreparable harm due to loss of goodwill and reputation, and loss of control over intellectual property rights. Huang Decl. ¶¶ 12-16. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages").

Such injury constitutes grounds for injunctive relief, in this case a temporary restraining order. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quotes and cites omitted); *see also Otter Prods., LLC v. Anke Grp. Indus. Ltd.*, Case No. 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (Holding TRO was necessary to prevent "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.")

As to customer confusion between Infringing Products and patented design/products, Federal Circuit also holds: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.,* No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm). Here, in the absence of a temporary restraining order, Defendant's infringement of the 'D763 Patent is likely to cause customer confusion with Plaintiff's products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill. Huang Decl. at ¶¶ 12-16.

Because there is a striking similarity (i.e., identical) between the Infringing Products and the patented design, Defendant's wrongful use of the 'D763 Patent in the Infringing Products is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC,* No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015)*, aff'd,* No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are 'relatively simple,' in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products"). Therefore, a causal nexus exists between Defendant's infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013).

Finally, considering that Defendant is an individual and business entities who, upon information and belief, resides in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgement may be difficult to collect and/or is not likely to

be collected, and therefore, injunctive relief is the only available relief at this time. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011). ("[A]ll three defendants are foreign corporations and [ ] there is little assurance that [plaintiff] could collect monetary damages.") (citations omitted)

As set forth above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued under Rule 65(b)(1).

### D. The Balance of Equities Tips in Plaintiff's Favor

As a willful infringer, Defendant is entitled to little equitable consideration, because any harm to Defendant possibly resulting from a temporary restraint is self-inflicted and the risk undertaken by Defendant in design patent infringement was voluntary and carefully calculated. Therefore, courts refuse to assign any "harm" to the Defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 992, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent"); *See also Ty, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (recognizing that in weighing balance of harms, "the court excludes the burden [the defendants] voluntarily assumed by proceeding in the face of a known risk");

As Plaintiff has demonstrated, Defendant has been profiting from the sale of Infringing Products while causing Plaintiff to suffer substantial losses and damage to his reputation. Moreover, Defendant will suffer no legitimate hardship because Defendant has no right to carry on their infringing activities. Thus, the balance of equities tips decisively in Plaintiff's favor.

### E. Issuance of the Injunction is in the Public Interest

"Public policy favors protection of the right secured by valid patents." *Cobraco Manufacturing Co. v. Valley View Specialties Co.*, No. 90 C 0284, 1990 U.S. Dist. LEXIS

10958, (N.D. Ill. Jan. 19, 1990), at *8 (citing *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). "The public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention." *Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) (citations omitted). In this case, the public is injured by the false impression that Plaintiff has granted a license to Defendant with respect to the 'D763 Patent and the grant of injunction would dispel the public confusion caused by Defendant's infringing conducts. The grant of an injunction would further the public's confidence in the patent and judicial system and provide incentives for inventors and corporations to continue developing innovative products and patenting new ideas without the fear they will be unable to stop potential infringers.

Furthermore, the public will be not harmed by an injunction because the public will be able to purchase the Patent Products supplied by Plaintiff and other non-infringing pet water fountain filters. *See National Presto Indus. Inc. v. Dazey Corp.*, 18 U.S.P.Q.2d 1113, 1121 (N.D. Ill. 1990) (granting TRO; "If an injunction makes the [defendant's product] unavailable, the public has plenty of substitutes, including [plaintiff's products]."); see also *Apple Inc.*, 809 F.3d at 647 (finding that the public interest factor weighed in favor of an injunction; "This is not a case where the public would be deprived of Samsung's products. Apple does not seek to enjoin the sale of lifesaving drugs, but to prevent Samsung from profiting from the unauthorized use of infringing features in its cellphones and tablets.") Accordingly, the public interest favors granting an injunctive relief.

## IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, Section 283 of the Patent Act authorizes courts to issue injunctive relief "in accordance to the principles of equity to

prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third-parties, including financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Therefore, in addition to a temporary restraining order against Defendant as stated above, Plaintiff further seeks (1) a temporary asset freeze in order to ensure the availability of permanent relief given the likelihood that Defendant will simply transfer their assets in an attempt to evade any judgment against them entered by this Court; (2) expedited discovery; and (3) court's permission for service of process by email.

      **A.**      **Preventing the Fraudulent Transfer of Assets Is Appropriate**

Plaintiff requests an *ex parte* restraint of Defendant's assets so that Plaintiff's right to an equitable accounting of Defendant's profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendant's compliance. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze is appropriate and may remain in place pending final disposition of this case."); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); and *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("Because the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [the defendant's] assets in order to ensure the availability of that final relief."); *See also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F.

App'x 707, 709 (5th Cir. 2007). Without an asset restraining order in place, Defendant (as a foreign individual/entity) may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts. Huang Decl. ¶17.

Courts in this District have granted asset restraining orders in similar cases. In a recent design patent infringement case of *Jun Lu v. Device X,* No. 23-cv-04282, (N.D. Ill. July 10, 2023), the Plaintiff faced similar emergent issues as in the current case. The Court in *Jun* granted an *ex parte* TRO including retraining Defendants from offering for sale, selling and importing any products not authorized by Plaintiff and from forming new entities, freezing Defendants' assets, granting Plaintiff's request for expedited discovery, and service of process by electronic mail and electronic publication, and a total of $2,000 bond as security ($1,000 per defendant). *Id*. at *2-6. *See also Oakley, Inc. v. Does* 1-100, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (Dow, J.) (granting *ex parte* application for temporary restraining order including the transfer of domain names, freezing of Defendant's financial accounts, and service of process by electronic publication and electronic mail); *Tory Burch LLC v. Zhong Feng, et al.*, No. 12-cv-9066 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Coach, Inc., et al v. Does* 1-100, No. 12-cv-8963 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Tory Burch LLC v. Does 1-100*, No. 12-cv-07163 (N.D. Ill. Sep. 14, 2012) (Lee, J.) (same); *Deckers Outdoor Corp. v. Partnerships*, No. 13 C 2167 (N.D. Ill. Mar. 27, 2013), at *16-18 (same).

Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset restraining order to preserve relief sought by Plaintiff. In addition, Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendant's infringement activities, and likelihood of Defendant transferring his unlawful profit from the sale of Infringing Products to offshore bank accounts. Accordingly, an

asset restraining order is proper.

###### B.     Plaintiff is Entitled to Expedited Discovery

Here, Plaintiff moves for an expedited discovery to discover bank and payment system accounts Defendant uses for the sales of infringing products. The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, 06-cv-06964, 2007 W.L. 4557812, *15 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). "A district court has wide latitude in determining whether to grant a party's request for discovery." *Id*. (citations omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

"Federal Rule of Civil Procedure 26(d) explains that parties may generally serve discovery only after a Rule 26(f) conference, 'except ... when authorized by ... court order.' To determine whether to authorize expedited discovery in a particular case, courts generally apply a "good cause" standard." *Deckers Outdoor Corp.*, No. 13 C 2167 (N.D. Ill. Mar. 27, 2013), at *17, citing Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.").  Moreover, according to *Deckers*, "[t]here is good cause to allow for expedited discovery. Because the Defendants in this case are located overseas and have gone to great lengths to conceal their identities and avoid detection, it is likely that this Court's restraining order would be of little value if the Plaintiff is unable to discover the Defendant's bank accounts and serve the financial institutions maintaining those accounts." *Id*. at *17-18.

The instant case is similar to *Deckers*, where, upon information and belief, Defendant is

located overseas and its true identity or ownership is unknown. Furthermore, Defendant may be
using a third-party payment platform, such as credit cards, PayPal, Amazon payment system,
along with foreign bank accounts for international transfers. The interposing third-party between
the consumers and Defendant further helps to conceal Defendant's identity. Without being able
to discover Defendant's bank and payment system accounts, any asset restraint would be of
limited value because these accounts would ensure Defendant's continuing sales of Infringing
Products. Furthermore, the scope of expedited discovery is tailored to include only what is
essential to prevent further irreparable harm to Plaintiff. In light of this, Plaintiff requests that it
be allowed to conduct limited expedited discovery related to Defendant's financial accounts,
sales, and profits related to the infringing products.

> ### C.     Service of Process by Email is Warranted

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff also requests that the Court
enter an order permitting it to serve the summons, complaint, proposed temporary restraining
order, and notice of any hearing the Court may schedule on Defendant by email.

Service of process by email is warranted for Defendant since, upon information and
belief, Defendant is located in China and has no apparent presence in the United States.
Nevertheless, United States District Courts, including in this District, have routinely permitted
alternative service of process notwithstanding the applicability of the Hague Convention. *See
e.g., Gianni Versace, S.P.A. v. Yong Peng, et al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) ("Nor
must Versace attempt service by contacting the Chinese Ministry of Justice, as suggested by
[defendant]. The plain language of Rule 4 requires only that service be made as directed by the
court and not prohibited by international agreement."); *In re Potash Antitrust Litig.*, 667 F. Supp.
2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the

22

Hague Convention."); *see also*, *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (authorizing alternative service pursuant to Fed. R. Civ. P. 4(f)(3)); *Levi Strauss & Co., v. Zhejiang Weidu Garment Co., Ltd. et al.*, No. 16-cv-7824 (N.D. Ill. Nov. 17, 2016) (same); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331-32 (S.D.N.Y. 2015) (same); *In re LDK Solar Securities Litigation*, No. C 07-05182 WHA (N.D. Cal. Jun. 12, 2008), at *2 (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority).

More importantly, the grant of an injunction is time sensitive and the duration of a granted temporary restraining order is rather limited. If the Court grants Plaintiff's request for a temporary restraining order, the order would only remain in effect for a maximum of 14 days, and the hearing on the preliminary injunction must occur "at the earliest possible time" prior to the expiration of the temporary restraining order. Fed. R. Civ. P. 65(b) ("The order expires at the time after entry–not to exceed 14 days–that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."). However, the process of serving Defendants with the relevant documents by international mail (and through the Hague Convention) would likely take a minimum of several months if not years.

Furthermore, service of process by email for Defendant is appropriate and necessary because Defendant, on information and belief: (1) relies primarily on electronic communications to communicate with its customers, demonstrating the readability of this method of communication and (2) Plaintiff is unable to determine the exact physical whereabouts or identities of Defendant.  *See, e.g.*, *Deckers Outdoor Corp.*, No. 13 C 2167, at *17 (finding service by email and electronic publication appropriate under similar circumstances). Therefore,

Plaintiff requests that this Court, in accordance with Fed. R. Civ. P. 4(f)(3), grant its motion to serve Defendant by email. Plaintiff expects to obtain the email addresses from Amazon.com with the discovery requested above.

## V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security under Fed. R. Civ. P. 65(c) upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *See Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972); *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). Because there is only one defendant in the current suit and the strong and unequivocal nature of Plaintiff's evidence of design patent infringement, Plaintiff asks that this Court require Plaintiff to post a bond of no more than one thousand U.S. dollars ($1,000.00). *See, e.g., Jun Lu,* No. 23-cv-04282, (N.D. Ill. July 10, 2023), at *6 ($1,000 per defendant); *Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-03249 (N.D. Ill. April 14, 2015) (unpublished) ($10,000 bond); *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## VI.    CONCLUSION

Defendant's infringing conducts are irreparably harming Plaintiff's business, reputation, and consumers. Without entry of the requested relief, Defendant's infringement of the 'D763 Patent in connection with the making, using, offering to sell, selling, or importing of the Infringing Products will continue to irreparably harm Plaintiff. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing, Plaintiff requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Date: February 27, 2024                        Respectfully submitted,


                                               By:  /s/Yichen Cao/_____
                                               Yichen Cao

                                               **ANALECTS LEGAL LLC**
                                               1212 S Naper Blvd. Suite #119 -
                                               PMB 238
                                               Naperville, IL 60540-7349

                                               Yichen Cao, Ph.D., J.D.
                                               Illinois Bar No. 6326669
                                               Email: ycao@analectslegal.com
                                               Tel: 1.630.386.5514

                                               Elliot Mendelson, Ph.D., J.D.
                                               Delaware Bar No. 3981
                                               Email:
                                               emendelson@analectslegal.com
                                               Tel: 1.312.375.7844

                                               *Attorneys for Plaintiff*

25